FREDERICK A. HODSON *et al.*

*v.*

THE EUGENE GLASS COMPANY.

*Filed at Ottawa May 15, 1895.*

1. CORPORATIONS—*when note and mortgage of corporation to its president are invalid.* A note and mortgage by a corporation to its president, to secure a sum advanced by him in payment of the stock subscription of another stockholder, are invalid.

2. MORTGAGE—*assignee takes subject to defenses.* The assignee of a negotiable note secured by chattel mortgage takes the mortgage subject to any defenses which the mortgagor had against it in the hands of the mortgagee.

3. INJUNCTION—*against enforcement of mortgage—when proper.* An injunction against the enforcement of a mortgage given by a corporation to secure a note made to its president, invalid in the latter's hands, is proper, although the note has been transferred to a *bona fide* holder.

4. BILLS AND NOTES—*who not a bona fide holder of a note.* A purchaser of a note given by a corporation to its president is not a *bona fide* holder, where, although the corporation is solvent, he pays for the note but three-fourths of its amount, giving his personal unsecured note, at six months, for two-thirds of such payment, and makes no inquiry as to the circumstances under which the note was given, takes no interest in enforcing its collection or foreclosing a mortgage securing it, and knows of difficulties of such president with the corporation and that the mortgage was withheld from record by him.

5. EVIDENCE—*note obtained by fraud—burden on holder to show good faith.* The holder of a negotiable note has the burden of showing that he acquired it in good faith and for value, where the maker shows that it was obtained by fraud.

6. EQUITY—*jurisdiction to cancel note obtained by fraud.* A bill seeking cancellation, for fraud, of the note and mortgage of a corporation, and to enjoin collection, cannot be considered simply as a bill to enjoin a trespass, and the suit is within the jurisdiction of a court of equity.

7. APPEALS AND ERRORS—*error in a party's favor not available on appeal.* The objection that relief granted by a decree is not as broad as prayed for in the bill and recommended by the report of the master, approved by the decree, is not available to the defendant against whom the decree is rendered.

*Hodson* v. *Eugene Glass Co.* 54 Ill. App. 248, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Thomas G. Windes, Judge, presiding.

R. C. Busse, and Severy & Galloway, for appellants :

General allegations are not sufficient to invoke equitable relief: *Railroad Co.* v. *Anderson,* 108 Ill. 68 ; *Railroad Co.* v. *Chicago,* 138 id. 464; *Livingston* v. *Livingston,* 6 Johns. Ch. 501; *Goodell* v. *Lassen,* 69 Ill. 145; High on Injunctions, (3d ed.) sec. 722.

A bill for an injunction will not lie to restrain trespass upon personal property. High on Injunctions, (3d ed.) 445 ; *Normadin* v. *Mackey,* 38 Minn. 417 ; *Cline* v. *Libby,* 46 Wis. 123; *Bushnell* v. *Avery,* 121 Mass. 148 ; *Clark's Appeal,* 62 Pa. St. 450.

The contention of counsel for appellee that the taking of possession is but one step toward foreclosure is fallacious. The taking of possession is foreclosure. The legal title to the property vests absolutely in the mortgagee, subject only to the mortgagor's right to redeem. *Wentworth* v. *People,* 4 Scam. 550; *Simonds* v. *Jenkins,* 76 Ill. 481; *McConnell* v. *People,* 84 id. 479.

The office of an interlocutory injunction is to preserve the subject in dispute in its then condition. It is never employed to give affirmative relief, or to correct wrongs and injuries already perpetrated, or to restore parties to rights of which they have been deprived. *Wangelin* v. *Goe,* 50 Ill. 563 ; *Menard* v. *Hood,* 68 id. 122 ; *Railroad Co.* v. *Taylor,* 134 id. 603; *Baxter* v. *Board of Trade,* 83 id. 146; *Fisher* v. *Board of Trade,* 80 id. 85.

If the note and mortgage were valid when executed, no subsequent and distinct transaction which does not affect or impair the good faith which was felt and extended when they were executed, can invalidate them. *Chesterman* v. *Gardner,* 5 Johns. Ch. 33; *Woods* v. *Hynes,* 1 Scam. 103.

The presumption of good faith, when the note is assigned before maturity, is equivalent to proof, and it cannot be overcome by a presumption of bad faith. *Goodman* v. *Simonds*, 20 How. 942; *Matson* v. *Alley*, 141 Ill. 287; *Shreeves* v. *Allen*, 79 id. 553; *Comstock* v. *Hannah*, 76 id. 530.

Notice, to affect the holder, must exist at the time he acquires the paper, for then his relation to it is fixed, and subsequent notice does not affect his title. Daniel on Neg. Inst. sec. A, 789.

WOOLFOLK & BROWNING, for appellee:

It is well settled in this State that the purchaser or assignee of a chattel mortgage takes subject to all defenses and equities. *Scott* v. *Magloughlin*, 133 Ill. 33; *Petillon* v. *Noble*, 73 id. 567; *Insurance Co.* v. *Gordon*, 121 id. 375; *Bank* v. *Schott*, 135 id. 665; *Loewenthal* v. *Railway Co.* 93 id. 433; *Shippen* v. *Whitten*, 117 id. 282; *Barbour* v. *White*, 37 id. 164.

The interlocutory injunction was proper, until the final decree should decide the rights of the parties, as ancillary to the final relief. High on Injunctions, sec. 449; Pomeroy's Eq. Jur. sec. 910.

Not being entitled to relief on final hearing, appellants are not injured, and could not be injured, by the granting of the preliminary injunction. *Hanford* v. *Blessing*, 80 Ill. 188; High on Injunctions, sec. 1693.

It being shown that the note and mortgage are fraudulent and void, the mortgage is void in Hodson's hands in any event, (*Scott* v. *Magloughlin*, 133 Ill. 33, and other cases,) and the burden is on Hodson to show that he paid a valuable consideration for the note. *Kirchoff* v. *Goezlin*, 30 Ill. App. 190; *Wright* v. *Brosseau*, 73 Ill. 381; Daniel on Neg. Inst. sec. 166.

From the knowledge of Hodson's attorney of the facts surrounding appellee and appellant Fleming, as he says, from December 10, 1892, and from Fleming's statements to Hodson, is it not fair to say that Hodson was put on

inquiry?   *Prins* v. *Lumber Co.* 20 Ill. App. 236; *Sturges' Sons* v. *Bank*, 49 Ill. 120.

Mr. Justice Magruder delivered the opinion of the court:

This is a bill, filed on February 3, 1893, by the appellee, the Eugene Glass Co., against the appellants, Frederick A. Hodson and William R. Fleming, to enjoin the foreclosure of a chattel mortgage, purporting to have been executed by appellee to appellant, Fleming, and also to enjoin the collection or assignment of the note purporting to be secured by said mortgage. Upon the filing of the bill, a preliminary injunction was granted. Motion was made by defendants to dissolve the preliminary injunction, which motion was overruled. Answers were filed to the original bill, and the bill being subsequently amended, further and amended answers were filed to the bill as amended. The cause, being at issue, was referred to a master in chancery, who took testimony and made a report, finding that no indebtedness existed from the Glass Company, the complainant below, to Fleming when the mortgage was made; that the note and mortgage were a fraud upon the company, and invalid in the hands of Fleming; that Hodson, to whom the note had been transferred, was not a *bonâ fide* holder for value thereof; and that the same was invalid in his hands; and recommending that the note be delivered up and canceled, and that the foreclosure of the mortgage be perpetually enjoined. The circuit court overruled the exceptions to the master's report and confirmed the same, and decreed that the note and chattel mortgage were null and void and of no effect, and that the defendants be perpetually enjoined from collecting the note and from foreclosing the mortgage. The decree of the circuit court has been affirmed by the Appellate Court, and from the judgment of the latter court the present appeal is prosecuted.

The note was for $4000.00. The note and chattel mortgage are dated September 14, 1892, but the mortgage was not recorded until February 2, 1893. The note purports to be executed by the company to Fleming on September 14, 1892, and is payable eight months after date. The mortgage covers the machinery, fixtures, stock and books of the company.

The Eugene Glass Company was organized under the laws of Illinois in March, 1892, by the appellant, William R. Fleming, and one Henry Erkins for the purpose of manufacturing and selling art glass. At first the stock was $10,000.00 consisting of 1000 shares of $10.00 each, half belonging to Fleming and half to Erkins, 10 shares, however, going to Fleming's wife, Eugenie, and 10 shares to Erkins' brother, Albert. Fleming had some money; Erkins had no money, but was a designer of art glass, and his skill was offset against the money of Fleming. Upon the original organization of the company William R. Fleming, Eugenie Fleming and Henry Erkins were directors, William R. Fleming was president, Henry Erkins vice-president, and Albert Erkins secretary. Appellant, Fleming, had charge of the books and the finances and Henry Erkins of the designing and manufacturing. Erkins paid no money into the treasury of the company; Fleming paid in $9000.00. No certificates of stock were issued until October, 1892, when the capital stock was increased to $25,000.00, of which John T. Boddie and Charles G. Smith took 900 shares and paid in $9000.00. Of the $9000.00 paid in by Fleming, it is not denied that $5000.00 went to pay for his own and his wife's stock, but the dispute arises over the remaining $4000.00.

It is claimed by Fleming, that he advanced this sum of $4000.00 as a loan to the company; and that he, as president of the company, executed to himself the note and mortgage, dated September 14, 1892, to secure the $4000.00 so advanced as a loan to the company. On the other hand, it is claimed by Henry Erkins that he de-

clined to go into the company unless he could own one half the stock; that Fleming was anxious to have the benefit of the skill of Erkins and agreed to advance the money to pay for the stock of Erkins; that Erkins was to pay back the money out of the dividends on his stock; and that Fleming put the $4000.00 into the company to pay for the stock of Erkins. The material question in the case is, whether this sum of $4000.00 was a loan to the company, or a payment upon the stock subscribed for by Erkins. If it was a loan to the company, then the note and mortgage, provided they were properly executed, represented an indebtedness from the company to Fleming, but if it was a payment upon Erkins' stock, then the company owed no debt to Fleming, and he had no right to take a note and mortgage from it.

The theory that there was a loan to the company is sustained only by the testimony of Fleming. Erkins swears to the contrary. Three or four witnesses swear, that Fleming told them he had paid for Erkins' stock and Erkins owed him therefor. When the new stock was issued to Boddie and Smith in October, 1892, Fleming permitted a certificate of stock to be issued to Erkins and took a note to himself from Erkins for the amount of such issue. At this time also Fleming made written reports to Boddie and to others as to the total indebtedness of the company, and failed to include in such reports any indebtedness of $4000.00 to himself. In order to induce Boddie and Smith to buy stock in October he signed a written guarantee, that the company owed nothing except certain specified debts amounting to $4379.24, which did not embrace any indebtedness of $4000.00 to himself. Although the chattel mortgage purports to have been executed on September 14, 1892, it was withheld from record until February 2, 1893, the day on which the appellant, Fleming, took forcible possession of the mortgaged property. Henry Erkins, Albert Erkins and Smith swear, that they never knew of the

existence of the note and mortgage until February 2, 1893, when the seizure of the property took place. Albert Erkins swears, that, on September 14, 1892, a replevin suit was begun for the company against the firm of Flannagan & Biedenweg; and that he was induced to sign some papers as secretary, which he supposed at the time to be papers needed to commence the replevin suit; and that he never intentionally signed any note and chattel mortgage as secretary of the company. It is unnecessary, however, to further discuss the evidence. The finding of the circuit court, that the $4000.00 was a payment upon the stock subscription of Henry Erkins, and not a loan to the company, is fully sustained by the testimony.

It is claimed, however, that the appellant Hodson is a *bona fide* holder for value of the note through an alleged assignment thereof to him by Fleming before maturity. So far as the chattel mortgage is concerned, the assignee of the note could take no other interest in the mortgage than that which was derived from the assignment of the note. The assignment of the note carries with it the mortgage as an incident to the principal debt, but in such case the assignee of the note takes only an equitable interest in the mortgage. The assignee of the mortgage takes it subject to the defenses which the mortgagor had against it in the hands of the mortgagee. Hodson had no other or greater rights in relation to the mortgage, and stood in no better position, than Fleming, the mortgagee. It follows that, if the court had jurisdiction to entertain a bill of this kind at all, there was no error in making the injunction perpetual against the enforcement of the mortgage. (*Petillon* v. *Noble*, 73 Ill. 567).

As to the note, Hodson has not appeared as a witness in this case to explain the circumstances of the transfer of the note to himself. It is claimed, that Fleming transferred the note to Hodson on January 16, 1893, more than two weeks before the chattel mortgage was recorded, and received therefor $1000.00 in cash and Hodson's personal

unsecured note for $2000.00 due in six months after date. Fleming's explanation in regard to the transaction, and particularly in regard to the alleged cash payment of $1000.00, is not satisfactory. The corporation appears to have been solvent, and it is difficult to understand why its note for $4000.00 secured by a chattel mortgage on its property should be disposed of for $3000.00 payable in the manner stated. The active man in taking possession of the property on February 2, 1893, was not Hodson, but Fleming. The former made no inquiry as to the note, though the circumstances were such as to put him on inquiry, and seemed to take no interest in enforcing the collection of the note, or in foreclosing the mortgage which secured it. Prior to January 16, 1893, Fleming made threats that he would ruin the company, and filed a bill against it as early as December 10, 1892, which he subsequently dismissed. His difficulties with the company and with the officers thereof who succeeded him in its management in December, 1892, and his withholding of the chattel mortgage from record, were known to Hodson. The court below held that Hodson was not a *bona fide* purchaser for value of the note, and we are inclined to think that this finding was correct.

The general rule is, that the holder of a note is presumed to be, *prima facie*, a holder for value. (Story on Notes—4th ed.—sec. 196). But where the maker of the note shows, that it was obtained from him by fraud, the burden of proof is shifted from him to the holder, and the latter must show that he acquired it in good faith for value in the usual course of business, and in such a way as not to create a presumption of knowledge of its invalidity. (Daniel on Neg. Ins.—4th ed.—sec. 815; Story on Notes, 196). Under all the circumstances of this case it was a fair conclusion from the evidence, that there was fraud in the inception of the instrument. In fact the evidence of Albert Erkins tends to show, that the note was not really executed by the company. It is not necessary,

that the assignee of the note have express notice of the fraud. (Story on Notes, sec. 197). The circumstances may be such as to charge him with notice, when they are so pointed and emphatic as to be *primâ facie* inconsistent with any other view than that there was something wrong in the title. (Daniel on Neg. Ins. sec. 796). "It must clearly appear that the endorsee was apprised of such circumstances as would have avoided the note in the hands of the indorser." (Idem). The consideration paid for the note by the assignee thereof is immaterial except as bearing on the question of notice, but it may be such as *prima facie* to show notice and create the presumption of bad faith in the purchaser. (Daniel on Neg. Ins. sec. 777a). The inadequacy of the price paid for the note may be considered, in connection with other circumstances, in determining whether the holder is chargeable with notice. (Daniel on Neg. Ins. sec. 779).

But the main objection urged upon our attention by counsel for appellants is, that there is no jurisdiction in a court of chancery to entertain a bill of this kind; that the bill is one to enjoin a trespass, and that the remedy of appellee was at law by an action of replevin or trespass. The bill alleges, that Fleming is insolvent; that no judgment can be collected against Hodson; that Fleming and the other defendants took forcible possession of the factory and office of the company, expelled the workmen therefrom, closed the doors, and refused to allow the workmen to work, or the officers to perform their duties, and have stopped the business of the company, and that irreparable injury will be done unless the defendants are enjoined. When the motion to dissolve the preliminary injunction was overruled, the defendants below took no appeal to the Appellate Court under the statute, but the cause proceeded to a hearing, as has been stated.

The bill prays, that the note and mortgage may be decreed to be null and void and to be delivered up and canceled. It is contended by counsel for appellee, that the

final decree, in granting a perpetual injunction against the collection of the note and the foreclosure of the mortgage, merely grants relief which is ancillary to the main relief of cancellation for fraud; and that the bill, being one for the cancellation of the instruments in question, cannot be regarded as simply a bill to enjoin a trespass. We are disposed to concur in this view.

Equity will exercise the remedy of cancellation where there is actual fraud in the party defendant, in which the plaintiff has not participated. The jurisdiction proceeds upon the ground, that, where the enforcement of an instrument would be inequitable and unjust, the party holding it should be compelled to surrender it for cancellation. One of the instances, in which the jurisdiction is often exercised, is in relation to negotiable instruments before their maturity. (3 Pomeroy's Eq. Jur. sec. 1377; 1 Story's Eq. Jur. secs. 695, 700). In such cases an injunction is generally granted against the transferring such an instrument. (3 Pom. Eq. Jur. sec. 1377, page 417, note 1).

The relief here asked is not only against interference with the property mortgaged, but for the cancellation of a note not yet due, alleged to have been obtained by fraud, and liable to be transferred to an innocent holder separately from any transfer of the mortgage. A maker of a promissory note, secured by a chattel mortgage, may, by bill in equity, restrain the insolvent payee thereof from transferring the same before maturity, and from proceeding to foreclose, on the ground of fraud and failure of consideration, and may show the real character of the transaction by parol testimony. (*Belohradsky* v. *Kuhn*, 69 Ill. 547; *Petillon* v. *Noble, supra; Carpenter* v. *Talbot*, 33 Fed. Rep. 537; *Becker* v. *Anderson*, 6 Neb. 499; *Lanier* v. *Adams*, 72 Ga. 145; *Magrant* v. *Dickerson*, Rich. Eq. Cases, (7 S. C.) 199; *McCormick* v. *Hartley*, 107 Ind. 248; *Badgett* v. *Frick*, 28 S. C. 176).

In *Normandin* v. *Mackey*, 38 Minn. 417, the action was to have a chattel mortgage adjudged to be paid in full

and to have the same canceled; and it was there held, that the remedy was at law for trespass or conversion, or in replevin; it does not appear in that case that there was a note secured by the mortgage, but it does appear that the debt had been paid and the time for payment had passed, and the property was in the possession of the mortgagor, so that the application for an injunction against a threatened taking of the property under the mortgage was merely an application to enjoin a trespass. In the case at bar, however, the mortgagee had possession of the property, having begun the foreclosure by a seizure of it, and the mortgage secured a note not yet due, and both note and mortgage were procured by fraud and were never legally executed by the mortgagor; and the relief asked is for the cancellation not merely of the mortgage, but of the note also. Other authorities referred to by counsel for appellants will, upon examination, be found to be distinguishable from this case.

Counsel for appellants also contend, that the relief granted by the decree is not as broad as the relief prayed for in the bill, and recommended in the report of the master which is approved by the decree. This, however, is a matter which can work no injury to appellants, and of which they have no right to complain. The question, claimed by appellants to have been raised by their motion to dissolve the injunction, and by their further motion on the hearing to dismiss the bill for want of equity, arises upon the allegations of the bill, and is thus stated by them in the opening sentence of their argument: "does the bill make a cause sufficient to give jurisdiction to a court of equity?"

We perceive no error in the record that would justify a reversal.

The judgment of the Appellate Court is accordingly affirmed.

*Judgment affirmed.*