## WESTLAKE v. COOPER et al.

No. 8387—Opinion Filed Feb. 12, 1918.

Rehearing Denied March 26, 1918.

(171 Pac. 859.)

1. Bills and Notes — Negotiability — Accelerating Maturity.

The negotiability of a promissory note is not destroyed by interpolating provisions for accelerating its maturity made in an accompanying mortgage, but not contained in such note.

## 2. Bills and Notes — Bona Fide Holder —Defenses.

Defenses available between prior parties to a negotiable promissory note cannot be interposed to defeat recovery thereon in an action by a holder in due course.

## 3. Appeal and Error—Theory of Defense.

A theory of defense neither suggested by the pleadings nor relied upon at the trial will not be considered upon appeal.

## 4. Appeal and Error — Right to Allege Error — Defendant in Error.

"This court will not consider whether, in the trial of a cause, there was error in a ruling against defendant in error, not involved in any error assigned by plaintiff in error, in the absence of a cross-petition in error." St. Louis, I. M. & S. Ry. Co. v. Lewis, 39 Okla. 677, 136 Pac. 396.

(Syllabus by Bleakmore, C.)

Error from District Court, Kingfisher County; James B. Cullison, Judge.

Action by Elva E. Westlake against Henry Cooper, Robert Tutt, and others. Judgment by default against all the defendants except defendant Tutt, who answered, and recovered judgment, and plaintiff brings error. Reversed, and cause remanded for a new trial.

F. L. Boynton and C. L. Billings, for plaintiff in error.

McKeever & Moore, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Kingfisher county on December 18, 1914, by the plaintiff in error against defendants in error, seeking recovery upon two promissory notes and the foreclosure of a real estate mortgage securing the same. On December 4, 1915, judgment as prayed was rendered upon default against all defendants except Tutt, who had answered.

By the petition it is alleged, in substance, that Henry and Carrie Cooper executed and delivered to Robert Tutt their two promissory notes of date November 22, 1913, for $100 and $225, respectively, bearing interest at the rate of 10 per cent. per annum, payable at the office of Harry C. Fitch, Hennessey, Okla., on November 1, 1914, and November 1, 1915, together with a real estate mortgage securing the same, by the terms of which mortgage it was provided that "upon default of the payment of any part of the principal or interest or any one of said notes at maturity, or upon the failure to pay any lawful assessment upon said premises when the same shall become due and payable, each and all of said several amounts herein se-

cured shall immediately become due and payable, and this instrument shall be subject to foreclosure according to law"; that before the maturity of said notes, the defendant Tutt indorsed upon each thereof. "Pay to Harrry C. Fitch, Robert Tutt," and contemporaneously assigned and transferred the mortgage securing same, together with said notes, to Harry C. Fitch; that before the maturity thereof; for a valuable consideration, Fitch indorsed, transferred and delivered said notes, with the mortgage duly assigned by him, to the plaintiff, Westlake; that on the day of its maturity, through a notary public, plaintiff duly presented the $100 note, and protested same for nonpayment, and pursuant to the provision of the mortgage, on December 15, 1914, declared the $225 note due and payable, and duly presented and protested it for nonpayment; that at the time of making said protests the notary public posted notices of the same to Robert Tutt and Harry C. Fitch to their respective post office addresses, postage prepaid, etc.

Defendant Tutt answered by way of general denial, and as a "second defense," after admitting the indorsement and delivery of the notes to Fitch, set forth that such indorsement was only for the purpose of transferring the notes and his rights under a certain chattel mortgage which he alleged had also been executed as security for the payment of said notes, and that it was at the time agreed between him and Fitch that he should not become liable as indorser upon said notes. He further alleged that he assigned the real estate mortgage in suit "without recourse," but that after its execution the assignment was altered to read "with recourse." The answer to the second defense alone is verified.

Trial was had between plaintiff and defendant Tutt on December 15, 1915, at which, over objection, defendant was permitted to adduce testimony tending to sustain the theory of his answer relative to the alleged agreement with Fitch releasing him from liability as an indorser. The court charged the jury as follows:

"The court further instructs you that there is but one question for you to determine in this case, namely: Were the notes and mortgage in question traded, assigned by Robert Tutt to Harry C. Fitch with or without recourse? * * *

"The court instructs the jury that the defendant Robert Tutt in this case alleges and says that he traded, transferred, and assigned the notes in question and the mortgage to Harry C. Fitch, in full payment for a house and lot in the city of Hennessey, Okla., and that when he deliv-

eved said mortgage to the said Harry C. Fitch, he assigned the same without recourse. * * *

"In this connection the court instructs you that said alteration is a very material alteration, and the burden of proof is upon the defendant Robert Tutt that said alteration was made after the assignment and delivery of said notes and mortgage, by the defendant Robert Tutt, to Harry C. Fitch; and, if you find from the preponderance of the evidence in this case that the said notes and mortgage were sold and delivered to the said Harry C. Fitch 'without recourse' and that the assignment of said mortgage was changed or altered to read with recourse' after said notes and mortgage were assigned and delivered to the said Harry C. Fitch, then it will be your duty to find for the defendant Robert Tutt."

There was verdict and judgment for defendant, and plaintiff has appealed. .

If plaintiff is a holder in due course of the note in suit, then clearly the collateral agreement with Fitch to the effect that defendant should not be liable, as indorser was not available as a defense to this action, and the instructions above set forth were prejudicially erroneous. Section 4167, Rev. Laws 1910; Hodgins v. Northwestern Finance Co., 46 Okla. 95, 148 Pac. 717. Defendant neither pleaded nor attempted to prove that plaintiff was not an innocent holder of the note in question and for value before maturity.

It is contended by defendant that the $225 note is not payable at a determinable future time (by virtue of the clause in the mortgage accelerating its maturity if default be made in the payment of the $100 note), but upon a contingency, and is therefore nonnegotiable, for which reason plaintiff could not take it as a holder in due course.

By the Negotiable Instruments Law (chapter 49, Rev. Laws 1910) it is provided:

"Sec. 4051. An instrument to be negotiable must conform to the following requirements: * * *

"Third. Must be payable on demand, or at a fixed or determinable future time.

"Sec. 4054. An instrument is payable at a determinable future time, within the meaning of this chapter, which is expressed to be payable:

"First. At a fixed period after date or sight; or,

"Second. On or before a fixed or determinable future time specified therein; or,

"Third. On or at a fixed period after the occurrence of a special event, which is certain to happen, though the time of happening be uncertain.

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

Manifestly, by its own terms, the note in question is expressed to be payable at a fixed period after date, and, independently of the mortgage accompanying it, is a negotiable instrument. Do the provisions of the mortgage render its maturity contingent, and thus affect its negotiability?

The general rule frequently announced in this jurisdiction is that a note and a mortgage given to secure its payment are construed together (Okla. City Development Co. v. Picard, 44 Okla. 647, 146 Pac. 31; Sims v. Cent. St. Bank, 56 Okla. 129, 155 Pac. 878; First Nat'l Bank v. Howard, 59 Okla. 237, 158 Pac. 927); but so far as we are informed, this court has never recognized the doctrine that under such rule the negotiability of a promissory note is destroyed by interpolating the collateral stipulations of an accompanying mortgage not contained in such note. If such were the rule, every note, when secured by mortgage, however simple in its terms, might be deprived of its otherwise negotiable character.

It will be noted that the stipulation for acceleration of payment is contained in the mortgage, and not in the notes themselves. The notes are evidence of the debt, fixing the terms and time of its payment. The mortgage gives a lien upon real estate to secure the promise to pay contained in the note, and merely affords an additional remedy for failure to perform such promise; its provisions relating wholly to the security. The holder of the notes might have abandoned the mortgage entirely and sued and recovered on the notes; in which event the fact that a mortgage had been given as security (no matter what provision it contained relative to acceleration of the time of payment of such notes) would have been immaterial and ineffectual.

In Farmers' Nat. Bank v. McCall, 25 Okla. 600, 106 Pac. 866, 26 L. R. A. (N. S.) 217, it is said:

"It is further insisted, however, that section 793, Wilson's Rev. & Ann. St. Okla. 1903, which provides, 'Several contracts relating to the same matters between the same parties, and made as parts of substantially one transaction, are to be taken together,' concludes this question in favor of the de-

fendant in error. This section was borrowed by the lawmakers of the territory of Oklahoma from the statutes of Dakota Territory. The same statute was retained in force in the state of North Dakota. In the case of First National Bank of St. Thomas v. Flath, 10 N. D. 281, 86 N. W. 867 (section 3900, Rev. Code N. D. 1899), this section was construed and held to constitute a rule of interpretation merely and united several contracts into a single contract only for such purposes, and that a real estate mortgage and the notes secured thereby did not constitute a single contract, but remained as separate contracts, except for the purposes of interpretation. No authority is cited by the defendant in error construing such provision otherwise. We necessarily conclude that the stipulation in the mortgage regarding attorney's fees does not render the note of December 19th nonnegotiable. It is also a well-supported rule that, if the note is negotiable, the mortgage securing the same shares the same immunity from defense. First Nat. Bank of St. Thomas v. Flath, 10 N. D. 281, 86 N. W. 867; Carpenter v. Longan, 16 Wall. 271, 21 L. Ed. 313."

In Phillips v. Williams, 33 Okla. 766, 127 Pac. 1072, the court held:

"Where W. and wife sued P. on two notes, due, respectively, April 4, 1910, and September 4, 1910, and to foreclose a real estate mortgage executed by him, of even date, to secure their payment, and where the notes contained no reference to the mortgage but the latter provided that upon failure to pay principal and interest as evidenced by the first note, the mortgagees may declare the whole debt due 'and payable at once and proceed to collect said debt * * * and to foreclose said mortgage,' held that, although the notes and mortgage evidenced separate contracts, the mortgagees could take advantage of said clause to foreclose, and that a personal judgment on both notes was proper."

And it quoted with approval the holding in McClelland v. Bishop, 42 Ohio St. 124, as follows:

"Where there is a series of negotiable notes in the usual form, for distinct sums of money, payable at distinct and specified times in the future, with a mortgage to secure each, according to its tenor and effect, which contains a stipulation that, if default be made in the payment of any one 'then each and all should fall due, and this mortgage to become absolute as to all said notes remaining unpaid at the happening of such default' held that such stipulation relates to the remedy by foreclosure or other proceedings under the mortgage, and upon such default the mortgage may be foreclosed for the whole debt. It is a stipulation for the advantage of the mortgagee, and of full force as to a remedy on the mortgage, but does not operate to vary or extinguish the obligations expressed on the face of the notes themselves for general purposes."

In Bright v. Offield, 81 Wash. 442, 143 Pac. 159, construing provisions of the uniform Negotiable Instruments Law identical with those above quoted from our statute, it is said:

"According to what we believe to be the better rule, a mortgage securing a note, though referred to in the note, but without expressly adopting its conditions, is merely ancillary to the note, and the conditions found in the mortgage alone will not change the character of the note as a negotiable instrument. The promise to pay is held to be a distinct agreement from the mortgage, and, if couched in proper terms, the note is negotiable."

In Board of Trustees of Westminster College v. Piersol, 161 Mo. 271, 61 S. W. 811, it is held:

"Where a deed of trust provides that in default in the payment of the interest the whole note shall become due for the purpose of foreclosure, the entire note becomes due for that purpose whenever the interest becomes due and remains unpaid, but, except for that purpose, the note is not affected by a deed of trust."

To the same effect is Owings v. McKenzie, 133 Mo. 323, 33 S. W. 802, 40 L. R. A. 154.

We conclude that the stipulation in the mortgage accompanying the notes in suit in no wise affected their negotiability, and, as a corollary, that plaintiff is a holder thereof in due course.

It is urged by defendant in his brief that the provision in the mortgage to the effect that upon default in the payment of the first note the second should immediately become due and payable, if relating merely to the foreclosure of such instrument, could not accelerate the maturity of the second note so as to affect his liability as an indorser, and therefore the notice of its dishonor alleged to have been given before its maturity was ineffectual, and also that the action upon such note was prematurely commenced.

As to this contention it seems sufficient to say that such theory of defense was not suggested by the pleadings or relied upon at the trial in the court below, but is presented here for the first time, and therefore may not properly be considered. Buel, Pryor & Daniel v. St. Louis & S. F. Ry. Co., 65 Okla. 108, 163 Pac. 536.

Defendant further contends that, notwithstanding he was permitted to introduce

evidence and prevail in the trial court upon a theory of defense not available against plaintiff, yet the judgment in his favor was properly rendered, and should be affirmed, for the reason that plaintiff failed to establish that notice of dishonor of the notes in suit, without which he was discharged from liability as an indorser, was given him as required by the Negotiable Instruments Law, and upon this phase of the case insists that the court below erred in overruling his demurrer to plaintiff's evidence.

Under the rule which obtains in this jurisdiction we are precluded from considering the action of the trial court in this regard.

It St. Louis, I. M. & S. Ry. Co. v. Lewis, 39 Okla. 677, 136 Pac. 396, it is held:

"This court will not consider whether, on the trial of a cause, there was error in a ruling against defendant, not involved in any error assigned by plaintiff in error in the absence of a cross-petition in error."

And in the body of the opinion it is said:

"At the conclusion of the evidence the trial court sustained a demurrer to the evidence offered for the purpose of showing subsequent illness resulting from the cold suffered by plaintiff while in the waiting room, and, by the instructions given the jury, limited her right of recovery to pain and suffering experienced by her during that time; but, although plaintiff excepted and at this time complains of this action of the trial court, she has not filed cross-assignment of errors here, and we are unable to consider whether there was error in this ruling."

In Hume, Trustee, v. Brown Shoe Co., 33 Okla. 634, 126 Pac. 823, it is held:

"Alleged errors committed by the trial court, of which defendant in error complains will not be considered, but held to be waived, where no cross-petition in error is filed."

And in the body of the opinion it is said:

"Counsel for defendant seeks to present in his brief the error which he contends the court committed in overruling his motion striking at the service had in this case; it being his claim that the same was insufficient to secure jurisdiction of the defendant, and that the judgment rendered herein was therefore void. No cross-petition in error setting forth this error was filed; and, in the absence thereof, the error complained of, if any existed, cannot be considered, and will be held to have been waived."

"An error complained of by a defendant in error will not be considered in this court when he fails to file cross-petition in error."

See Hanna v. Barrett, 39 Kan. 445, 18 Pac. 497. See, also, Waterson v. Devoe, 18 Kan. 223.

Because of the error in the instruction submitted to the jury the judgment should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.