230     APPELLATE COURTS OF ILLINOIS.

VOL. 118.]     Carroll v. Barry Bros. Transportation Co.

---

## William F. Carroll v. Barry Brothers Transportation Company, et al.

### Gen. No. 11,571.

1. MOTION TO DISSOLVE—*when operates as demurrer.* Where the only relief sought by a bill in chancery is an injunction, a motion to dissolve for want of equity on the face of the bill, operates as a demurrer thereto and admits the truth of its allegations.

2. FINAL ORDER—*when dissolution of injunction becomes.* Where a bill in chancery seeks only relief by injunction, an order dissolving a temporary injunction, upon motion to dissolve for want of equity on the face of the bill, becomes final and appealable upon the dismissal of the bill by the complainant.

3. RESCISSION—*when return of property not essential to.* A return

Carroll v. Barry Bros. Transportation Co.

or a tender to return property received is in equity not always essential to rescission. In a proper case, a defrauded party may bring his action in equity and offer in his complaint to restore to the defendant what he has received and seek in such action a full declaration of the respective rights of the parties thereto,

Injunction proceeding. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Reversed and remanded. Opinion filed February 10, 1905.

**Statement by the Court.** This appeal presents for consideration the action of the Superior Court in dissolving a temporary injunction and dismissing appellant's bill of complaint for want of equity. The bill sets forth that appellant is a lawyer by profession, without experience in managing or operating vessels of any kind, but that in January, 1903, his health having become impaired so as to interfere with the practice of his profession, he was induced to purchase a two-thirds interest in a certain screw steamer or vessel called the " Gordon Campbell; " that certain representations were made to him as to the condition of the vessel, the expense of putting her in thoroughly good shape, the condition of her hull, machinery and boilers, and to the effect that her furniture, tackle, cable, compasses and equipment were stored in the warehouse of the Barry Brothers Transportation Company, and would be put on board when needed; that said statements were made by one Bowe, claiming to be the owner of the other third interest in the vessel, but in fact representing and acting as agent for certain of the appellees, and that the representations were false and fraudulent, made with the purpose of deceiving and defrauding complainant and to induce him to pay for two-thirds interest in the vessel an exorbitant and outrageous sum greatly in excess of the vessel's value; that said Bowe had no actual interest in the vessel, as appellant has since discovered, but had been vested with an apparent or fictitious one-third interest by certain of the appellees, (not including the Continental National Bank) so that he, Bowe, might obtain a purchaser of the remaining two-thirds interest for $10,000;

232    APPELLATE COURTS OF ILLINOIS.

VOL. 118.]    Carroll v. Barry Bros. Transportation Co.

that the statements made by Bowe were repeated and confirmed by said appellees, the Barry Brothers and the transportation company, and that the latter told appellant that Bowe was a good captain and that said appellees were accustomed to make as high as $17,000 a year out of the use of said vessel, all of which statements and representations it is claimed were false and fraudulent; that appellant, ignorant of the falsity of said representations, and relying upon the good faith of said appellees and the truth of their and Bowe's statements and representations, did on or about January 9, 1903, purchase from Barry Brothers Transportation Company a two-thirds interest in said vessel for $10,000, paying therefor $5,000 in cash and giving his notes for the remaining $5,000 of the purchase price secured by a mortgage on the vessel, receiving in return a bill of sale; that about the first of February following, appellant before going to Colorado where he was obliged to remain for two months on account of his health, made arrangements with Bowe to do certain specific things which it had been represented were all that were necessary to be done to put the vessel in good running order; that it then appeared she was in such a bad condition that it took from the first of February until May 9 following to put her in suitable condition for use, and that appellant had to pay for doing this and for replacing the furniture, compasses, cables, ropes and tackle of every description of which appellees had caused her to be completely stripped; that this was done at a cost to appellant of about $3,500, although he had been led to believe by the representations made to him as stated, that it would only cost $500 to put the vessel in first-class condition for travel; that subsequently, finding Bowe incompetent, appellant discharged him, and that upon appellant's demand in consideration of a payment of $1,000 additional to said appellees, the latter assigned to appellant a note for $5,000 and a mortgage given by Bowe on his apparent and fictitious third interest in said vessel, which mortgage appellant has foreclosed and thereby obtained title to Bowe's alleged interest; that appellant has

suffered serious pecuniary loss and damages by reason of the misrepresentations made as aforesaid, the details of which are set forth with some particularity in the bill.

It is stated that the notes given by appellant in payment of part of the purchase money were secured by mortgage on the vessel and that one of appellant's said notes, being for the sum of $1,000 and interest, has been placed in the hands of the Continental National Bank, Chicago, appellee herein, for collection; and that if said note is not paid at maturity said bank will foreclose said mortgage and forfeit appellant's right and interest in the vessel in a summary proceeding, under a clause in the mortgage set forth in the bill, unless restrained by order and injunction of the court. Complainant asks for an accounting and offers upon re-payment of the money paid by him to said appellees and cancellation of the mortgage and notes thereby secured to return and surrender the vessel to the vendors and to do whatever else the court in equity may decree to be done by him.

The bill prays for an accounting, for an injunction restraining appellees from collecting or attempting to collect the said notes, from foreclosing or attempting to foreclose the said mortgage and from forfeiting or attempting to forfeit complainant's rights and interest in the vessel by summary proceeding or otherwise, until the matters in controversy shall have been heard and determined.

An injunction was issued. Subsequently, July 28, 1903, the injunction was on hearing dissolved "for want of equity on the face of the bill." July 31 following a final order or decree was entered continuing the injunction in force pending an appeal to this court, and on motion of complainant, as the order states, the court having "heretofore entered an order to dissolve said injunction," the bill was dismissed for want of equity. From this decree the present appeal is prosecuted.

HENRY D. BEAM, for appellant; WILLIAM F. CARROLL, *pro se.*

234     APPELLATE COURTS OF ILLINOIS.

VOL. 118.]     Carroll v. Barry Bros. Transportation Co.

DENIS E. SULLIVAN & D. L. JARRETT, BARRY & CROWLEY and A. A. McCLANAHAN, for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is urged by appellees' counsel that this court has no jurisdiction to entertain the appeal because, as it is said, the bill seeks a rescission of the sale and an accounting, "and the injunction was simply ancillary." The argument is that since the order dissolving the injunction was unappealable, and the order dismissing the bill was made on appellant's motion after the order of dissolution was entered, therefore appellant is estopped from assigning error on the court's action taken at his own instance. Appellant claims, however, that the only relief sought by the bill is an injunction restraining appellees from foreclosing the mortgage on the vessel and from collecting the notes thereby secured, even though there is also a prayer for an accounting; and that the motion to dissolve "operated precisely as a demurrer and by it the defendant admitted the truth of all the allegations relied upon to entitle the complainant to an injunction." Titus v. Mabee, 25 Ill. 232–235.

It is well settled that where the only relief sought by the bill is an injunction, a motion to dissolve for want of equity on the face of the bill operates as a demurrer to the bill admitting the truth of its allegations, and when such motion is allowed the case is virtually at an end. If thereupon the complainant is willing to rest his case upon a demurrer, he must move the court to dismiss the bill, thus obtaining a final order of dismissal from which appeal or error will lie, although neither would lie from a mere decision on the demurrer or motion to dissolve. The latter is merely interlocutory. So where the only relief sought by the bill is an injunction, the complainant, upon dissolution which is in effect a final order denying all relief, may dismiss his own bill and take an appeal or writ of error. Williams v. Chicago Ex. Co., 188 Ill. 19–26. In Titus v. Mabee, *supra*, it is said: "If other relief were sought by

Carroll v. Barry Bros. Transportation Co.

the bill the decree dissolving the injunction could not, however, be regarded as final." In the bill under consideration the complainant "submits and claims that he is entitled to have an accounting with said defendants of the several sums he has already paid to said Barry Bros. Transportation Co., * * * and to have a decree * * * for the sum which may be found by the court to be due him in the premises." Upon payment of that sum and cancellation of the notes and mortgage he offers to return the vessel to the Barry Bros. Transportation Co. and to do whatever else the court in equity may require. The prayer of the bill is that an account may be taken as between complainant and Barry Bros. Transportation Co. and a decree "entered for such sum as may be found by the court to be due .to him from said Barry Bros. Transportation Company." Then follows the prayer for an injunction against all the defendants to restrain them from collecting or attempting to collect, from transferring the notes and mortgage and from foreclosing the mortgage, or forfeiting appellant's interest in the vessel. It thus appears that against three of the defendants, John Barry, Peter Barry 'and The Continental National Bank, the only relief sought is the injunction. Against them, therefore, the order dissolving the injunction was in effect final and as to them appellant was entitled to dismiss his bill and prosecute his appeal as he has done. Notwithstanding the prayer for other relief against one of the defendants, we think the bill may be properly regarded as substantially seeking an injunction only. Appellant not only concedes but contends that upon the allegations of the bill and aside from the relief by injunction, he could not maintain it as one merely for an accounting or for rescission of the contract with the transportation company. Appellant treats the appeal therefore as involving only the propriety of the injunction. As said in Gardt v. Brown, 113 Ill. 475–480, "Appellants have treated the decree as final, and had they not their appeal would be dismissed."

It is further contended by appellees that appellant is not

236    APPELLATE COURTS OF ILLINOIS.

VOL. 118.]    Carroll v. Barry Bros. Transportation Co.

entitled to have the collection of the notes and foreclosure of the mortgage restrained by injunction while he retains the vessel and makes no offer to return it. The bill contains an offer to return the vessel upon cancellation and return of the notes and mortgage given by appellant, and repayment of what upon an accounting may be found due him. It is urged by appellant that the case presents an exception to the general rule which requires a party seeking to recover what he has parted with upon a contract which he was induced to enter into by fraud, to show that he rescinded the fraudulent contract before the commencement of the action at law by a return of the property obtained on his part under the contract. There are, however, authorities to the effect that the defrauded party may bring his action in equity and offer in his complaint to restore to the defendant what he has received, and that the rights of the parties can be fully regulated and protected in such action by the judgment when entered. It is said that such action "does not proceed upon a rescission but proceeds for a rescission." Gould v. Cayuga County National Bank, 86 N. Y. 75–83. In the case cited it is further said (p. 84): "The conclusion we thus reach leaves a defrauded party with ample remedies. One situated like the plaintiff can rescind by tendering or restoring what he has received and then commence his action. He may keep what he has received and sue to recover damages for the fraud; or he may commence an action in equity to rescind and for equitable relief, offering in his complaint to restore in case he is not entitled to retain what he has received. These actions are all fundamentally different." See also Allerton v. Allerton, 50 N. Y. 670–671, and Harris v. Equitable Life Assurance Society, 64 N. Y. 196–200. In the case last mentioned it is said: "In Allerton v. Allerton (50 N. Y. 670) this court held that the rule, that he who seeks to rescind an agreement upon the ground of fraud must place the other party in as good condition as that in which he was when the agreement was made, is satisfied if the judgment asked for will accomplish that result, and in

Carroll v. Barry Bros. Transportation Co.

such case no offer to return that which was received is necessary." In Hodson v. Eugene Glass Co., 156 Ill. 397–406, it is said that "equity will exercise the remedy of cancellation where there is actual fraud in the party defendant in which the plaintiff has not participated. The jurisdiction proceeds upon the ground that where the enforcement of an instrument would be inequitable and unjust, the party holding it should be compelled to surrender it for cancellation. One of the instances in which the jurisdiction is often exercised is in relation to negotiable instruments before their maturity (3 Pomeroy's Eq. Jur., sec. 1377; 1 Story's Eq. Jur., secs. 695, 700). In such cases an injunction is generally granted against the transferring of such an instrument. (3 Pom. Eq. Jur., sec. 1377, page 417, note 1)." In the case at bar the bill was filed before the maturity of any of the notes in controversy. The mortgage securing them by its terms authorizes the seizure of the vessel without notice in any port in this or other states where appellees may choose to seize her. There are allegations in the bill which, if true, tend to support the charge of fraud as alleged. We are of opinion, therefore, for reasons indicated, that the Superior Court erred in dissolving the injunction for want of equity upon the face of the bill.

The notes in controversy, secured by chattel mortgage, are by the terms of the statute (R. S. chap. 95, sec. 25,) when assigned, subject to all defenses existing between the payee and payor.

The decree of the Superior Court must be reversed and the cause remanded.

*Reversed and remanded.*