**Joliet Trust and Savings Bank and George Woodruff, Trustees Under the Last Will and Testament of Lewis E. Ingalls, Deceased, v. Esther E. Ingalls et al.**

**George Woodruff, Trustee Under the Last Will and Testament of Lewis E. Ingalls, Deceased, and Myra H. Peale, Appellants, v. William L. O'Connell, Receiver of Joliet Trust and Savings Bank, and Edward J. Barrett, Auditor of Public Accounts of the State of Illinois, Appellees.**

**Gen. No. 8,817.**

Opinion filed August 8, 1934. Rehearing denied September 11, 1934.

ARTHUR J. HUGHES, for appellants; FRANK MICHELS, of counsel.

ROBERT E. HALEY, for appellees.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On April 20, 1934, George Woodruff, as trustee, under the last will and testament of Lewis E. Ingalls, deceased, and Myra H. Peale, beneficiary, under said will, filed their petition in the circuit court of Will county in which they alleged that the Joliet Trust and Savings Bank, together with George Woodruff, were the trustees appointed by the last will and testa-

ment of Lewis E. Ingalls, deceased. The petition alleged that on October 5, 1913, Lewis E. Ingalls of Joliet, Illinois, departed this life and left a last will wherein he made various bequests, and devised and bequeathed the rest and residue of his estate to the Joliet Trust and Savings Bank and George Woodruff, in trust. The petition alleges that the Joliet Trust and Savings Bank and George Woodruff qualified as trustees under said will in December, 1913; that the Joliet Trust and Savings Bank and George Woodruff continued to act as such trustees until February, 1932, when the Joliet Trust and Savings Bank became insolvent and was closed by the auditor of public accounts; that J. E. Morrison was appointed receiver of said bank; that on March 11, 1932, an order was entered appointing the First National Bank of Joliet as cotrustee with George Woodruff to succeed the Joliet Trust and Savings Bank; that the First National Bank of Joliet was subsequently closed by the comptroller of the currency and on November 29, 1933, was discharged as trustee of said estate, by the circuit court of Will county; that since that date the petitioner, George Woodruff, under an order of said court in said cause proceeded to act as sole trustee of said estate; that on April 13, 1932, the Joliet Trust and Savings Bank by J. E. Morrison, its receiver, filed its account and report as such trustee in said proceedings; that said report was heard by the court April 23, 1932, and an order was entered approving the said report, and released the Joliet Trust and Savings Bank from further liability and responsibility as trustee and it was discharged. The order also provided that J. E. Morrison, as receiver, as aforesaid, was especially released and discharged from all responsibility and liability herein.

The appellants charge that there is deposited with the auditor of public accounts in the trust department,

$150,000 to secure the trust funds in the hands of the Joliet Trust and Savings Bank and that appellants are entitled to a first lien on this account.

The petition charges that during the time the Joliet Trust and Savings Bank acted as trustee of the estate, it as such trustee paid out large sums of money to itself, on purchases of securities on behalf of the said trust estate, which were the property of the Joliet Trust and Savings Bank, upon which the said Joliet Trust and Savings Bank made large profits, all of which was in violation of the duty of said bank as such trustee; that said purchases constituted breaches of said trust and were undertaken by it in unlawful disregard of its duties and obligations as such trustee, all of which said acts of the Joliet Trust and Savings Bank were concealed from the circuit court of Will county by said bank and were not known to said court on April 23, 1932, when the report of the said bank was approved, or on May 9, 1932, when the order was entered discharging the said Joliet Trust and Savings Bank and its receiver from all obligations and liabilities of said trust estate; that all of the said transactions were concealed from the court by said bank in the various reports by said bank in said proceedings. The petition further charges that the Joliet Trust and Savings Bank concealed these facts concerning such matters from the petitioner; that these facts did not become known to either of them until April 3, 1934; that the petitioners by said petition rescinded such transactions as are set forth in said petition, upon the repayment to George Woodruff as trustee of the estate of all the moneys paid by the said Joliet Trust and Savings Bank as trustee of said estate to itself individually for securities mentioned in said petition, and offered to return to the receiver of the Joliet Trust and Savings Bank said securities.

The petition sets forth that on February 2, 1934, J. E. Morrison resigned as such receiver of said bank and thereupon William L. O'Connell was appointed to succeed him. The petition states in detail various transactions of which the petitions complain. It is disclosed therein that the Joliet Trust and Savings Bank individually sold to itself as trustee special assessment bonds aggregating the amount of $76,000 and notes secured by trust deeds upon real estate aggregating $63,000; that practically all of said securities are in default and of doubtful value; that a large portion of the real estate mortgages were upon vacant land that provides no income whatever by which taxes and interest could be paid; that the Joliet Trust and Savings Bank made large profits to itself upon the sale of said securities to the said trust estate. The petition sets forth in detail the transactions of the bank as trustee which the petition charges were unlawful and a fraud upon the trust estate. The petition prays that the order of the court discharging the Joliet Trust and Savings Bank as trustee of said estate be vacated and set aside and that the court decree that the sale of the various securities described in the petition be declared illegal and a fraud upon the rights of the beneficiary of said estate; that the petitioners be granted leave to rescind the sale of said securities. They pray for an order requiring William O'Connell, as such receiver, to repay George Woodruff, trustee of said estate, all moneys received by said bank from the said trust estate by the sale of said securities, and ask for an accounting of the amount due said trustee, and for an injunction against the receiver and the auditor of public accounts restraining them from paying out any money in their hands of the Joliet Trust and Savings Bank or due said bank until further order of the court.

The defendants, Edward J. Barrett, auditor of public accounts of the State of Illinois, and William L. O'Connell, receiver of the Joliet Trust and Savings Bank, filed a motion to dismiss the petition because George Woodruff was cotrustee of this estate. They state that Myra H. Peale, *cestui que trust,* was given notice of the time and of the place and was actually represented in court at the time of the hearing of the report in the circuit court of Will county, in this estate; that by order of the court the report was approved and the bank was discharged of all liability. In support of this motion, Robert E. Haley, counsel for defendants, filed an affidavit setting forth the facts in which he claimed that all of the beneficiaries under the trust, had due notice of the hearing of said report. The case came before the court for hearing April 26, 1934, and an order was entered dismissing the petition. The court also denied the motion of petitioners for the issuance of an injunction as prayed for in said petition. Exceptions were taken to the entries of these orders and the case has been brought to this court on appeal for review.

The motion to dismiss the petition takes the place of a demurrer and all facts well pleaded in the petition are taken as true. This petition alleges in positive terms that the Joliet Trust and Savings Bank, while acting as such trustee, purchased from itself, securities that the bank had and made large profits to itself in such transactions. In the early case of *Miles v. Wheeler,* reported in 43 Ill. 123, our court in discussing a similar question uses the following language: "There is really no room for controversy as to the main question. It is perfectly manifest, from the facts stated above, that the name of Alexander was used merely as a means of passing the title of the land to Miles; that the sale to Alexander was simply colorable; and that the transaction was really a purchase

by an administrator at his own sale. This the law forbids. *Thorp v. McCullom et al.*, 1 Gilm. 614; *Dennis v. McCagg*, 32 Ill. 444; *Michoud v. Girod*, 4 How. 553. In this last case the Supreme Court of the United States gave this question a very searching examination, reviewing the authorities both in the common and civil law. In that case an executor, as in this an administrator, became the purchaser, through the interposition of a third person, of real estate belonging to the deceased, and sold at public sale. The court laid down the salutary rule that this is fraudulent *per se*, and that it matters not that the sale was at a public auction, for a fair price, and made through the medium of a third person as the bidder, and to whom the executor or administrator conveys. It avails nothing to show that the intentions of the trustee were honest, and that there was no fraud in fact. It is one of those cases in which the law will not permit a trustee to palter with his own conscience. It shields him from all temptation by the inflexible rule that he cannot buy. The plain and sufficient reason is that the interests of the buyer and seller of the same property are necessarily antagonistic, and the only safe rule is one which absolutely forbids a trustee to occupy two positions inconsistent with each other.''

Courts from other jurisdictions have announced a similar doctrine. *St. Paul Trust Co. v. Strong*, 85 Minn. 1, 88 N. W. 256; *Riordan v. Riordan*, 216 Iowa 1138, 248 N. W. 21; *In re Security Bank & Trust Co.* (Minn.), 224 N. W. 235. In the case of *Magruder v. Drury*, 235 U. S. 106, the Supreme Court of the United States in discussing this question say: ''It is a well settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interest of the estate, and not to permit his personal interest to in any wise conflict with his duty in that respect. The intention is to provide against any

possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity. 'It therefore prohibits a party from purchasing on his own account that which his duty or trust required him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells.' *Michoud v. Girod,* 4 How. 503, 555.

"It makes no difference that the estate was not a loser in the transaction, or that the commission was no more than the services were reasonably worth. It is the relation of the trustee to the estate which prevents his dealing in such way as to make a personal profit for himself."

From the facts alleged in the petition it is clearly apparent that the Joliet Trust and Savings Bank, acting as trustee for said estate, and purchasing securities from itself, acted illegally. The same is a fraud upon the estate.

The appellees do not seriously contend that the purchasing of these securities was not illegal and a fraud upon the estate but say that the appellants should be barred from maintaining their action as George Woodruff as cotrustee and Myra H. Peale, one of the beneficiaries, was fully advised of the investments and the nature thereof. There is nothing in the record to support this contention. The petition positively avers that neither George Woodruff nor anyone interested in the trust estate had any knowledge of the facts as set forth in the petition. An examination of the report of the trustee in said estate discloses all of the securities which they had on hand at the time of the

report, but nowhere does it state where the trustee procured these securities. The affidavit of the attorney in support of his motion cannot be considered as evidence, on a motion to dismiss. If the beneficiary under the trust did have notice of the transactions complained of, the same should be raised by an answer to the petition but cannot be raised on the motion to dismiss.

The appellees also contend that the motion to dismiss should be sustained for the reason that the term of court at which the order was entered has been closed and the appellants are barred from raising the question at this time. Here again it will be noticed that the petition states that neither the beneficiary under the trust nor either of the plaintiffs had notice or knowledge of the fraud practiced upon them until a few days prior to the time they filed their petition to set aside this fraudulent transaction. In the case of *White v. Sherman,* 168 Ill. 589, 605, the court in discussing the same question used this language: "In order to bind a *cestui que trust* by acquiescence in a breach of trust by the trustee, it must appear that the *cestui que trust* knew all the facts, and was apprised of his legal rights, and was under no disability to assert them. Such proof must be full and satisfactory. The *cestui que trust* must be shown, in such case, to have acted freely, deliberately and advisedly, with the intention of confirming a transaction which he knew, or might or ought, with reasonable or proper diligence, to have known to be impeachable. His acquiescence amounts to nothing if his right to impeach is concealed from him, or if a free disclosure is not made to him of every circumstance which it is material for him to know. He cannot be held to have recognized the validity of a particular investment, unless the question as to such validity appears to have come before him. The trustee setting up the acquiescence of the *cestui que trust*

must prove such acquiescence. The trustee must also see to it, that all the *cestuis que trust* concur, in order to protect him from a breach of trust. If any of the beneficiaries are not *sui juris,* they will not be bound by acts charged against them as acts of acquiescence. The trustee cannot escape the liability merely by informing the *cestuis que trust,* that he has committed a breach of trust. The trustee is bound to know what his own duty is, and cannot throw upon the *cestuis que trust* the obligation of telling him what such duty is."

In a later case, *Wright v. Simpson,* 200 Ill. 56, 63, the court says: "Again, 'courts of justice have power, on due proceedings had, to set aside or vacate their judgments and decrees, whenever it appears that an innocent party, without notice, has been aggrieved by a judgment or decree obtained against him without his knowledge by the fraud of the other party. Nor is the principle limited in its operation to courts which proceed according to the course of the common law.' In courts of probate the proper form of proceeding is by petition to vacate the former order, as having been obtained by fraud upon the party and imposition upon the court. (*Pease v. Roberts,* 16 Ill. App. 634.) It is undoubtedly true that a decree or judgment, standing unreversed and in force, cannot be called in question or impeached in a collateral proceeding, but the filing of the petition here is not an attempt to avoid the effect of a judgment in a proceeding purely collateral. A judgment, obtained by fraud at a former term of the court can be re-examined and set aside at a subsequent term of the court by the party aggrieved by the fraud. (*Edson v. Edson,* 108 Mass. 590.) Upon proof of fraud or collusion in the procurement of a judgment such judgment may be vacated at any time. (Freeman on Judgments, sec. 99.) As was said in *Pease v. Roberts, supra,* a court may 'protect its own dignity and prevent itself from being made an instru-

ment in the hands of a designing man to accomplish a wrong.' '' Fraud vitiates all contracts. In the absence of knowledge of the fraudulent acts, courts will take jurisdiction to relieve the injured party if the same is called to their attention within a reasonable time after the fraud is discovered.

It is insisted by the appellees that the bill should be dismissed because the party who seeks to set aside the transaction on account of fraud and to rescind the transaction should return or offer to return the consideration therefor. The only authority which appellees cite as sustaining this contention is the case of *Glen v. Dodson,* 347 Ill. 473, in which they quote: "On an election to rescind the consideration must be returned." The appellants in their petition offer to return to the Joliet Trust and Savings Bank all of the securities in question, upon the payment to them of the amount that is due them. In the case of *Taylor v. Taylor,* 259 Ill. 524, at page 538, the court said: "In Pomeroy's Equity Jurisprudence (vol. 6, sec. 688), the author says: 'In cases of fraud, if the defendant's act has prevented a complete restoration of the *status quo,* he cannot, in justice, urge this fact as a defense to the rescission. . . . Neither is a party obliged to return that which he will be entitled to retain even though cancellation be decreed.' The author further says that many courts, in dealing with the question of rescission, have completely lost sight of the distinction between the equitable remedy and the legal remedy of rescission, and points out why the rule requiring an offer to place the defendant *in statu quo* before bringing suit is not of universal application in courts of equity, and says insistence upon it in equitable proceedings would often work a complete denial of justice. The author of the chapter on 'Cancellation of Instruments' in 6 Cyc. says there is no little confusion upon this question among cases in the

same jurisdiction. After stating that the numerical weight of authority slightly favors the rule that restoration, or an offer to restore, must be made before suit brought, the author says (p. 313) : 'On the other hand, the courts of many States have held, in numerous well considered cases, that no offer of restoration before bringing suit is necessary. These courts advert to the distinction, so often lost sight of, between the equitable remedy of rescission or cancellation, where the avoidance of the contract, with its indispensable adjunct of restoration, is accomplished by the decree of the court, and legal rescission, where the act of plaintiff in avoiding the contract re-invests him with his legal title or right to sue, and must therefore be accompanied with restitution of the thing received by him.'' To the same effect is *Carroll v. Barry Bros. Transportation Co.*, 118 Ill. App. 230.

It is our opinion that the allegations of the petitioners in which they offer to return the securities to the Joliet Trust and Savings Bank are sufficient, and that this petition states a good cause of action and that the trial court erred in sustaining the motion to dismiss the said petition and denying the petition for an injunction. The order dismissing the petition is hereby reversed and the case remanded to the circuit court of Will county.

*Reversed and remanded.*