**Harold J. Stott, Appellee, v. H. H. Head, Appellant.**

**Gen. No. 9,774.**

Heard in this court at the May term, 1942. Opinion filed August 21, 1942. Rehearing denied October 6, 1942.

JAMES H. ANDREWS, HARPER ANDREWS and CAMPBELL ANDREWS, all of Kewanee, for appellant.

THOMAS J. WELCH and VERA M. BINKS, both of Kewanee, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

On March 25, 1939, the plaintiff filed his complaint in the city court of Kewanee for an injunction to restrain the defendant from foreclosing a chattel mortgage on property in the possession of and owned by the plaintiff. A temporary injunction was issued and after the chancellor had sustained the findings of the master in chancery, the injunction was made per-

manent. The defendant has appealed from this decree. A judgment was entered against the defendant for $147.80 as overpayments on the note secured by the mortgage, in the nature of claims for damages which would have been available to the defendant in a suit at law. It is first contended by the defendant that the court erred in taking jurisdiction of the suit, because the pleadings and evidence do not support a ground for equitable relief.

It appears from the evidence that it was the understanding of the parties that the mortgage was to be on all the typewriters in use for instruction purposes on the 13th day of November, 1937, and other equipment of the Kewanee Business College, all of which the defendant transferred to the plaintiff by bill of sale dated January 8, 1938. The note and mortgage were executed on the same day as the bill of sale, and the note was for $1,800 the unpaid balance of the purchase price for the typewriters and other equipment of the college.

In a letter to the plaintiff, the defendant had listed the typewriters for sale as: "28 Typewriters (6 Smiths, 7 Underwoods, 5 Woodstocks, 10 Royals)—$1,120.00." On October 13, 1937, after the defendant had received the letter, he came to Kewanee from his home in Michigan, and in the presence of the defendant, ascertained the number and examined the typewriters in use for instruction purposes in the college. On November 13, 1937, the plaintiff again examined the typewriters, and on that day agreed to buy the typewriters and other equipment of the college.

In the bill of sale, and in the mortgage the typewriters are described as, "6 L. C. Smith typewriters; 7 Underwood typewriters; 5 Woodstock typewriters; 10 Royal typewriters." Both parties consented to this general description of the typewriters, and considered it sufficient to express their understanding that the typewriters sold and mortgaged, were those

in use for instruction purposes, or, "on the typing floor" in the college on October 13, 1937, and November 13, 1937. The plaintiff took possession of the typewriters and other equipment on January 3, 1938.

One of the allegations of the complaint is that the plaintiff was to receive title from the defendant to 28 typewriters being 6 L. C. Smiths, 7 Underwoods, 5 Woodstocks and 10 Royals which were then in the business college and part of the equipment thereof; that between the time of the agreement to purchase all of said equipment, and the time the plaintiff took possession of the equipment, the defendant fraudulently removed from the business college 11 of the most valuable typewriters in said equipment, being 8 Royal and 3 L. C. Smith typewriters, and substituted therefor, 11 other typewriters, which were of much less value, and were in such poor condition that they were of little value, or use to the plaintiff. The complaint also charges that the defendant is insolvent; that the plaintiff would suffer irreparable damages if the mortgage were foreclosed; that the note and mortgage should be canceled.

Other allegations of the complaint are that the plaintiff is entitled to credits on his note as adjustment of tuition charges, as agreed by the defendant; that the bill of sale warrants the title to 14 light fixtures; that the defendant never had title to 12 of the fixtures, and damages should be awarded the plaintiff for the value of the 12 fixtures. The allegation of the complaint that the defendant had placed the mortgage in the hands of a constable for foreclosure, is not disputed. As above stated, the plaintiff's claims for credits on his note, and damages for default of title in the plaintiff to 12 light fixtures, were purely legal demands.

The Civil Practice Act provides that subject to rules, a plaintiff may join any causes of action, whether legal or equitable or both, against a defendant. The

simple objection that legal and equitable causes of action are joined in the complaint, is unavailing. (Section 44, Civil Practice Act [Jones Ill. Stats. Ann. 104.044]; Supreme Court Rules of Practice No. 11.) It has long been the rule that a court of equity having jurisdiction on any equitable ground, will retain the cause and afford complete relief, although it becomes necessary to enforce purely legal rights. (*Fleming v. Reheis,* 275 Ill. 132.)

The facts alleged in the complaint charging a substitution of typewriters, unchallenged in the pleadings by the defendant, except by his answer, constitute a charge of fraud directly connected with the subject matter of the foreclosure of the mortgage. The issuance of an injunction to restrain the foreclosure of a chattel mortgage based on the fraud of the mortgagee in connection with the execution, or foreclosure of the mortgage, is not foreign to the jurisdiction of a court of equity. (*Macpherson v. Morrill,* 190 Ill. 194; *O'Neill v. Dougherty,* 96 Ill. App. 1; *Hodson v. Eugene Glass Co.,* 156 Ill. 397; *Petillon v. Noble,* 73 Ill. 567; *Carroll v. Barry Bros. Transp. Co.,* 118 Ill. App. 230.) It does not appear from the abstract that the defendant made any objection in the trial court, that the plaintiff should have sought relief in a court of law, so there is no ruling of that court on such an objection. This being so, the defendant will be deemed to have waived this jurisdictional question in a court of review. It is stated by counsel for the defendant that the sufficiency of the complaint to state an equitable cause of action is challenged by his motion to dissolve the temporary injunction, which was filed immediately after the court enjoined the foreclosure of the mortgage. The reason stated in the motion, now pertinent to the question under consideration, is, "that there is no equity on the face of the complaint." It is decided in the case of *Leslie E. Keeley Co. v. Hargreaves,* 236 Ill. 316, at page 322, as follows: "The

first assignments of error are directed against the action of the court granting a preliminary injunction without notice, and without sufficient verification of the bill, and various defects in the bill are suggested. The granting of a preliminary injunction cannot be assigned for error. (*Tunison v. Chamblin,* 88 Ill. 378.) It is merely interlocutory, and is open to review only upon an appeal taken in the manner provided in the act for appeals from interlocutory orders. The injunction was made perpetual by the final decree, and in the review of the decree it is immaterial whether or not a preliminary injunction was issued, or, if it was, whether it was rightly or wrongly issued.''

The contention of the defendant that the court erred in taking jurisdiction of the suit, ''resolves itself into an assertion of the existence of an adequate remedy in the courts of law.'' 21 C. J. 161, sec. 145. This assertion should have been made in the trial court with a ruling thereon to save the jurisdictional question for review. Furthermore, the defendant filed an answer to the merits of the case, and in his counterclaim he asked for affirmative equitable relief of foreclosure of the mortgage. He made no motion to dismiss the complaint on the ground that the plaintiff had an adequate remedy at law; nor did he file a motion for a severance of the equitable and legal causes of action stated in the complaint. (*Leonard v. Arnold,* 244 Ill. 429 and *Anderson v. Olsen,* 293 Ill. App. 637 (Abst.); 21 C. J. 162, secs. 146 et. seq.) The subject matter of the suit not being wholly foreign to the field of equitable jurisdiction, the trial court did not err in taking jurisdiction of the suit.

The contention of the defendant that the plaintiff did not prove that the defendant was insolvent, is without merit. Both the master and the chancellor found in favor of the plaintiff on the charge of fraud made in the complaint. As will hereafter appear, there was competent evidence introduced by the plain-

tiff tending to support the charge of fraud. The court did not err in rendering a final decree. (*Heiderich v. Heiderich,* 18 Ill. App. 142.)

The decree confirming the report of the master finds that the statement of account between the parties is: I. That there was due on the note $1,908.00 with cash payment of $1,165.91, leaving unpaid on the note $742.09. II. Credits:

Winnifried Hannon—Tuition
 furnished .......................$63.57
Alberts Ryan—8½ months tuition
 furnished at $11.25 per month..... 95.62
Phyllis Johnson—Tuition furnished..100.00
Light fixtures—12 @ $9.85 each.....118.20
Typewriters ......................512.50 $889.89
Overpaid ................................$147.80

The decree canceled the note and mortgage and entered a money judgment in favor of the plaintiff against the defendant for $147.80. Division No. I of the account is not disputed. Each credit allowed in the division No. II of the account is contested by the defendant by specific objections thereto.

Directed at the item of the account allowing $512.50 for typewriters, it is argued by the defendant that the plaintiff, by his delay, has waived his right to damages for the alleged fraud of the defendant, as alleged in the complaint. This defense of the defendant is pleaded in his answer substantially as follows: That plaintiff personally supervised, attended and assisted in the delivery to him of all of the equipment of said business college on, or about January 1, 1938, and examined and identified all of said equipment on that date, and made no objection or complaint with reference thereto, and with full knowledge of all the facts relating to said transaction accepted all of said equipment in satisfaction of his contract of sale; that defendant failed and neglected for the period of one

year to raise the objections mentioned in the complaint, knowing all the facts with reference to said objections; that by reason of said delay, a large part of said equipment has depreciated in value, and has been sold, or transferred pursuant to the agreement of the parties, and has been injured and damaged in the course of its use in the business of the plaintiff; that various evidence and records with reference to said equipment has been lost, destroyed and become unavailable because of said delay; that defendant has been thereby greatly damaged and prejudiced in defending the claims asserted in the complaint, and in obtaining evidence of the facts with reference to said sale.

It appears from the evidence that the plaintiff took possession of the equipment of the college on January 3, 1938, and assumed control and operation of the college. There is no evidence that he made an examination of the equipment of the college on that date. The plaintiff testified that about one week after January 3, 1938, he discovered that eight new Royal and three L. C. Smith typewriters, which were on the typing floor of the college on November 13, 1937, were missing and a like number of similar make typewriters, but used or old ones, were among the typewriters on the typing floor. At the request of the plaintiff, Elmer Thiessen made an inventory of the typewriters on the typing floor during the forepart of January 1938. Thiessen was familiar with the typewriters on the floor on November 13, 1937. The witness C. D. Canfield, a salesman for the Underwood Typewriter Company, testified that he made routine examinations of typewriters on the typing floor of the college during the last week in October, and during the last week of November, or the first part of December, in the year 1937. Thiessen was the manager of a firm selling L. C. Smith typewriters. Both of these

witnesses corroborated the testimony of the plaintiff, relative to the missing new typewriters, and the presence there of the used typewriters.

In December 1938, the plaintiff told the defendant in his office in Peoria that he was making a payment at the bank on the note, and explained that he was not paying the balance on the note, because of the substitution of typewriters. The payment was made on the note to the amount of $1,115.91. The defendant, after this conversation with the plaintiff, employed an attorney to collect the note, and on March 20, 1939, the plaintiff paid $50 on the note, and a few days later filed his complaint for the injunction. Between January 3, 1938, and December 1938, the plaintiff and the defendant were on friendly terms, meeting socially, and the defendant visited the college of the plaintiff in Kewanee; the plaintiff visited the business school of the defendant in Peoria. The plaintiff testified that he spent about nine months corresponding with typewriter companies to learn the serial numbers of the used typewriters in question, so as to ascertain who had purchased them, and how long they had been in use.

The plaintiff has asked for equitable relief in his complaint, and he must be held to offer to do equity, in other words, pay the amount justly due on his note if he failed to prove the charge of fraud in the complaint. He has, in effect, asked for the affirmation of the contract of sale less such damages the evidence shows he has sustained under the allegations of his complaint, both of an equitable and a legal nature. The law gives him this remedy. That it would work a great hardship on him to rescind the contract of sale and return the subject matter of the sale to the defendant, on the ground of the alleged fraud, is apparent. He left his home in Michigan to take ownership and operation of the college, and the business of operating the college would have been lost to him

had he rescinded the sale. The contract of sale was fully executed on both sides. It was entirely fulfilled by the plaintiff when he paid part of the purchase price, and gave his note and mortgage for the unpaid balance of the purchase price. The defendant had delivered possession of the equipment of the college to the plaintiff.

The defendant, at the hearing before the master, defended the charge of fraud by denying that he had substituted used or old typewriters for new typewriters which were on the typing floor on November 13, 1937. He claims that on January 15 or 20, 1938, he moved several new typewriters from a storage room in the college which were by both parties excepted from the sale, and that the plaintiff was present when these typewriters, with other equipment of the college, were removed. There is no evidence that the defendant was prejudiced because of the loss, or destruction of records relating to typewriters, as alleged in his answer. If there was a change of typewriters, as alleged in the complaint, the defendant as an experienced owner and operator of the business college, frequently trading in used typewriters for new ones, had knowledge of the value of such typewriters.

Under the facts in evidence, the principle of law applicable to the defense of the defendant that the plaintiff by delay had waived his right to recover damages for the alleged fraud, is stated in the case of *Smith v. Werkheiser,* 152 Mich. 177, 115 N. W. 964, where the defendants sold a newspaper plant to the plaintiffs and they executed a note secured by a chattel mortgage on the plant for part of the purchase price. After the plaintiffs purchased the plant he discovered that false representations were made by the defendant concerning the circulation of the newspaper and the amount of advertising done by the newspaper. The defendant threatened foreclosure and the plaintiffs obtained a temporary injunction restraining

the seizure of the property, which the lower court refused to make permanent. The Supreme Court of Michigan reversed the decree, deciding that the case was one for appropriate equitable relief, and disposed of defendants' contention that the plaintiffs had waived their right to damages for the fraud as follows: "Defendants' counsel cites many authorities which hold that a defrauded party, in order to rescind a contract, must act with diligence, and that he must restore to the party who defrauded him what he received. The propositions declared by these authorities are elementary principles of law, but that have no application in this case. Complainants are not seeking to rescind their contract. They have affirmed their contract, and they recognize its binding force. They obtain relief in this case, not upon the ground of rescission, but upon the ground that they are entitled to have their damages—damages computed upon the assumption that the contract is affirmed—resulting from defendants' fraud applied in payment of the mortgage in suit." The principle of law stated in the above case is supported by the authorities. (*Van Natta v. Snyder, supra,* L. R. A. 1918A 110; 27 C. J. 484, sec. 135; 24 Am. Jur. 41.)

We have read the testimony of the plaintiff and the defendant in this case, as it appears in the abstract, and it is not clearly manifest therefrom that the plaintiff intentionally condoned the alleged fraud, and abandoned all right to recover damages for the fraud with full knowledge thereof. Aside from the filing of his complaint, there appears no evidence sustaining any conclusion of fact of the plaintiff's affirmation of the contract of sale equivalent to a ratification of it.

That part of the decree finding that the plaintiff is entitled to a credit of $95.62 as adjustment of tuition is based on conflicting evidence whether or not it was the understanding of the parties that the adjustment should be made as found in the decree. After a re-

view of the evidence, we conclude that the decree determining this controversy between the parties is not against the manifest or greater weight of the evidence.

The defendant failed to defend successfully his warranty of title, in his bill of sale, to 12 light fixtures. The parties had agreed that the purchase price of each light fixture was $9.85, a total of $118.20 which sum was included in the principal of the promissory note of the plaintiff. The plaintiff is entitled to a credit of $118.20 under the item of the account in the decree for light fixtures.

The finding in the decree that the plaintiff has proved the charge of fraud alleged in the complaint is the conclusion of the master in chancery, and a finding of facts by the chancellor on a question of fact on conflicting testimony is supported by the evidence. After a review of the evidence, we conclude that we would not be justified in disturbing the findings of the court on the contention that this finding is manifestly against the weight of the evidence.

The evidence as to the market value of the old typewriters substituted for the new Royals and the L. C. Smiths is not as clear as desirable. The plaintiff's witnesses testified as to the list price of new machines. There is also evidence as to the market value of the second hand, or used machines. The defendant, who is an experienced man in buying, selling and using both new and second-hand typewriters, testified that he knew the value of such typewriters, but an examination of his testimony did not disclose that he placed any particular value on either the used, or new typewriters. From an examination of the testimony relative to this subject, we are satisfied that the chancellor's finding is fair and not unreasonable.

We find no reversible error in the case, and the decree and judgment appealed from is hereby affirmed.

*Affirmed.*